PASS v. BECK

[156 N.C. App. 597 (2003)]

BENJAMIN FRANKLIN PASS, Plaintiff v. JACQUELINE ODETTE BECK, Defendant

No. COA02-669

(Filed 18 March 2003)

**1. Child Support, Custody, and Visitation— visitation—delay determining best interests of child**

The trial court did not abuse its discretion in a child custody case by delaying determination of the best interests of the child regarding visitation by the father pending a recommendation from a psychologist, because there was minimal contact between the father and the minor child as of that time.

**2. Child Support, Custody, and Visitation— visitation—child not a product of forcible rape**

The trial court did not abuse its discretion in a child custody case by finding as fact that the minor child was not a product of forcible rape but was from consensual intercourse, because: (1) the trial court found that plaintiff father, who denied the allegation, was a credible witness; (2) the trial court also found credible plaintiff's witnesses who corroborated plaintiff's testimony and stated that the parties appeared to be involved in a sexual relationship and were planning on getting married; and (3) the trial court found defendant mother's testimony to not be credible in part based on cell phone records indicating that she initiated contact with plaintiff around the time of the alleged assault and for two months thereafter, defendant was seen around and with plaintiff on his property, and she continued to accept paychecks from the parties' business.

**3. Child Support, Custody, and Visitation— visitation—best interests of child—safety of child**

The trial court did not abuse its discretion in a child custody case by determining the best interest of the child is promoted by visitation with plaintiff father even though defendant mother contends the trial court did not adequately consider her concerns for the safety of her child, because the trial court determined there was no act of domestic violence, the child was not a product of rape, and no other safety concerns were raised.

Appeal by defendant from orders entered 26 November 2001 and 28 March 2002 by Judge J.H. Corpening in New Hanover County District Court. Heard in the Court of Appeals 12 February 2003.

*Lea, Clyburn & Rhine, by James W. Lea, III, for plaintiff-appellee.*

*Virginia R. Hager and Michelle D. Reingold, for defendant-appellant.*

CALABRIA, Judge.

Defendant appeals orders entered 26 November 2001 and 28 March 2002 granting defendant primary custody of, and plaintiff visitation with, the parties' minor child. The November order also denied defendant's petition to terminate plaintiff's parental rights and dismissed defendant's complaint for a domestic violence protective order. A hearing on these actions was held on 4 June, 5 June, 30 July and 31 July 2001 in the New Hanover County District Court, the Honorable Judge J.H. Corpening ("Judge Corpening") presiding.

In the 26 November 2001 order, Judge Corpening found the following facts pertinent to this appeal. The parties were involved in a personal and business relationship from the mid-1980s until 1994. In 1994, the parties ceased contact. Sometime thereafter, the parties resumed their relationship. In 1996, plaintiff and defendant again began working together at plaintiff's business, they re-titled real estate in their joint names, and plaintiff gave defendant stock in his business. By late 1997, defendant had become "extremely dissatisfied with the way the Plaintiff conducted his business . . . [and] was attempting to hire an attorney with regard to her perceived legal problems." On 24 December 1997, defendant sought counseling from Family Services regarding "verbal, emotional and financial abuse from the Plaintiff." Defendant returned for additional counseling on 29 December 1997 and 6 January 1998. Defendant alleged that in early January 1998, plaintiff raped her, and the minor child was thereby conceived. The court found as fact:

> the reports of the assault during [January 1998] are not believable based on the lack of credibility of the Defendant and the credibility of the Plaintiff and his witnesses, in light of the financial disputes existing between the parties and the actions of the Defendant in the previous year arranging for ownership in both the business of the Plaintiff and the parties' real estate.

The court found defendant was not credible, in part, because she maintained contact with plaintiff for two months following the alleged assault. Moreover, although defendant had professed herself to be a virgin, the court found "by the greater weight of the evidence that [defendant] in fact engaged in sexual contact in the form of both oral sex and sexual intercourse with the Plaintiff prior to January of 1998." The court found defendant's statements regarding her virginity "placed her in a position to fabricate a story about being assaulted or raped when it was learned that she had become pregnant."

The court found plaintiff and his witnesses credible. Plaintiff testified he did not rape defendant, but that they were involved in a consensual sexual relationship. Plaintiff's witnesses testified they saw plaintiff and defendant in situations that corroborated plaintiff's testimony. The court found as fact that when plaintiff and defendant fought, defendant became "extremely angry, using harsh language" and plaintiff was "very passive and rarely argumentative," and noted the credible "testimony does not support Defendant's contentions that he would or had violently assaulted her." Based on these findings, the court found as fact that "[t]he birth of the minor child was not a product of forcible rape, but consensual intercourse." The court then concluded as a matter of law that "Defendant has failed by the greater weight of the evidence to establish that the birth of this child was a product of forcible rape."

Regarding custody, the court concluded that "both parties are fit and proper persons to have the joint care, custody and control of the minor child with the Defendant having primary custody and the Plaintiff having secondary custody." The court ordered that the parties share custody, with plaintiff being entitled to visitation. The court ordered "no contact" until the parties met with a psychologist, who would submit a report to the court with a recommended graduated visitation schedule. On 28 March 2002, the court, having received a recommended schedule from the psychologist, concluded as a matter of law that it was in the best interest of the child to follow the visitation schedule set forth by the psychologist and delineated in the order.

Defendant appeals both orders alleging the trial court erred by (I) failing to make findings of fact and conclusions of law in the November order that contact between the minor child and plaintiff was in the best interests of the minor child; and (II) finding the minor child was not conceived as a result of rape; and (III) finding in the

March order that it was in the best interest of the minor child to have visitation with plaintiff.

We note, at the outset, "[i]t is well settled that the trial court is vested with broad discretion in child custody cases." *McConnell v. McConnell*, 151 N.C. App. 622, 626, 566 S.E.2d 801, 804 (2002). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

### I. November Order: Best Interests Determination

[1] Defendant asserts the trial court erred, in the 26 November 2001 order, by not finding as fact or concluding as a matter of law that visitation between the minor child and plaintiff was in the best interests of the child. Defendant argues that "[p]resumably, then, the trial court never considered what is in the best interest of the minor child." However, the transcript reveals Judge Corpening specifically dictated: "the order of custody will read as follows: At this time both parents are fit and proper persons to have custody of this child. It is in the child's best interests for the mother to have [] primary custody." Judge Corpening delayed a determination as to the best interests of the child regarding visitation with her father, instead he required a psychologist to make recommendations to the court regarding visitation.

"Visitation rights orders, along with other matters related to child custody are governed by the standard of 'promot[ing] the interest and welfare of the child.' " *Rawls v. Rawls*, 94 N.C. App. 670, 676, 381 S.E.2d 179, 183 (1989) (quoting N.C. Gen. Stat. 50-13.2 (b) (1987)). In *Rawls*, as in the case at bar, the court found it was in the best interests of the child for the mother to exercise primary custody and the father was a fit and proper person to exercise visitation rights. Due to the minimal contact between father and child as of that time, the court, in both *Rawls* and this case, sought the expertise of a third-party professional to assist in the determination of the best interests of the child with regards to visitation. Upon receiving that assistance, the court in this case, in the 28 March 2002 order, made findings of fact supporting the conclusion of law that "[i]t is in the best interest of the minor child that visitation be facilitated between [the child and her father] in accordance with the schedule [recommended by the psychologist]." Since the trial court did conclude that visitation was in the child's best interests, and the findings of fact support that con-

PASS v. BECK

[156 N.C. App. 597 (2003)]

clusion, we hold the trial court did not abuse its discretion in delaying determination of the best interests of the child regarding visitation pending a recommendation from a psychologist.

## II. November Order: Finding of fact

[2] Defendant asserts the trial court abused its discretion by finding as fact that the minor child was "not a product of forcible rape, but consensual intercourse." We disagree.

'In child custody cases, where the trial judge has the opportunity to see and hear the parties and witnesses, the trial court has broad discretion and its findings of fact are accorded considerable deference on appeal. So long as the trial judge's findings of fact are supported by competent evidence, they should not be upset on appeal.'

*Westneat v. Westneat*, 113 N.C. App. 247, 250, 437 S.E.2d 899, 900-01 (1994) (quoting *Smithwick v. Frame*, 62 N.C. App. 387, 392, 303 S.E.2d 217, 221 (1983)). Therefore, "the trial court's findings of fact are conclusive if there is evidence to support them, even though the evidence might sustain a finding to the contrary." *Raynor v. Odom*, 124 N.C. App. 724, 729, 478 S.E.2d 655, 658 (1996).

In the case at bar there is competent evidence supporting the trial court's finding of fact that "the birth of the minor child was not a product of forcible rape, but consensual intercourse." Plaintiff testified:

Q: Frank, [defendant] has testified, I think, that she was assaulted by you she told the Sheriff's Department that the 12th; she's testified it was either the 6th, 7th, or 8th, that's my recollection. That's four different dates she said. On any one of those days did you ever forcefully assault this person that you thought you were going to marry or rape her in any way?

A: No, I have not.

The court found as fact that plaintiff was a credible witness. The court also found credible plaintiff's witnesses who, corroborating plaintiff's testimony, testified that plaintiff and defendant appeared to be involved in a sexual relationship and were planning on getting married. The witnesses further testified the relationship was volatile and described "the arguments of the parties as being extremely one sided with the Defendant becoming extremely angry, using harsh language towards the Plaintiff to the point that she would spit in his

face." The court found "[t]his testimony does not support Defendant's contentions that [plaintiff] would or had violently assaulted her." Moreover, the court found defendant was not credible, in part, because cell phone records indicate she initiated contact with plaintiff around the time of the assault and for two months thereafter, she was seen around and with plaintiff on his property, and she continued to accept paychecks from the business. Since the trial court found plaintiff and his corroborating witnesses credible and defendant not credible, we are bound to conclude the trial court's decision is not manifestly unsupported by reason and does not constitute an abuse of discretion.

We note, however, that although there is competent evidence supporting the trial court's finding of fact, the order was replete with troubling findings. Most disturbing are the findings of the court supporting the conclusion that defendant was not credible. The court based its finding, in part, on symptoms of defendant's alleged post traumatic stress disorder ("PTSD"). An expert in PTSD, who testified defendant suffered from the disorder, testified that "[i]ndividuals who go through a traumatic event . . . experience a period of being in shock where one does not know their surroundings, so it's not surprising that an individual would not remember the exact date [of the traumatic event]." Although no other experts testified, and the expert was not discredited on this point, and the court made no finding indicating the expert was not credible, the court nevertheless found defendant's allegations of rape were not credible because she "indicated at least four different dates upon which the rape may have occurred." Moreover, the court considered defendant not to be credible because, immediately after the assault, she did not seek medical care, make a police report, photograph her bruises, and only told her best friend and her mother. Despite these findings, we are bound by the standard of review, and in this case cannot hold the trial court's decision was the result of an abuse of discretion.

III. March Order: Best Interests Determination of Visitation

[3] Defendant asserts the trial court abused its discretion by determining the best interest of the child is promoted by visitation with plaintiff because of defendant's concerns for the safety of her child. In determining best interests, "the court shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party and shall make findings accordingly." N.C. Gen. Stat. § 50-13.2(a) (2001). Defendant argues the trial

court did not adequately consider defendant's concerns for safety of her child. We disagree. The court, in dismissing the complaint for a domestic violence protective order, specifically determined defendant had failed to establish domestic violence occurred and had no reason to fear plaintiff. Since the court determined that there was no act of domestic violence, that the child was not a product of rape, and no other safety concerns were raised, we cannot find the court abused its discretion by ordering visitation between the minor child and her father.

Affirmed.

Judges McCULLOUGH and TYSON concur.